## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

DEVIN LARA, individually and on behalf of
all others similarly situated,

          Plaintiff,                            Class Action

              - against -                Jury Trial Requested

WALMART STORES INC.,

          Defendant.

## COMPLAINT

      Plaintiff, DEVIN LARA ("Plaintiff"), by and through the undersigned counsel, hereby files this Class Action Complaint on behalf of herself and all others similarly situated throughout the United States and alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge, against Defendant, WALMART STORES, INC., ("Defendant") as follows:

## I. INTRODUCTION

      1.     Defendant manufactures, labels, markets, and sells flavored potato snack food products under the Great Value™ Veggie Straws brand (the "Products"), which are advertised containing "No Artificial Flavors or Preservatives," despite the fact the Products contain the chemical preservative citric acid, and synthetic flavoring ingredient, malic acid.

      2.     Conscious of consumers' increased interest in more nutritious products free of artificial additives, and willingness to pay more for products perceived to meet this preference, Defendant misleadingly and deceptively seeks to capitalize on these consumer health trends.

3.      As a direct result of Defendant's deceptive statements concerning the nature of its Products, Plaintiff and Class Members paid a premium for the Products over other comparable products that do not make the same representations.

4.      Defendant's false and misleading representations and omissions violate state and federal law, detailed more fully below, including Florida's Deceptive and Unfair Trade Practices Act (FDUTPA).

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented in this Complaint because it is a class action arising under 18 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Plaintiffs class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.

6.      On information and belief, Plaintiff alleges that the total claims of individual class members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the state of Florida, as set forth below, and Defendant can be considered a citizen of Arkansas. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

7.      Furthermore, Plaintiff alleges that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

8.      Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because Defendant conducts business within, may be found in, and is subject to personal jurisdiction in this judicial district, and Plaintiff resides in and purchased the Products that are the subject of this action in this District.

### III. <u>PARTIES</u>

9.      Plaintiff, DEVIN LARA, is an individual consumer over the age of eighteen, and is a resident of Citrus County, Florida.

10.     Defendant, WALMART STORES, INC., is an Arkansas corporation with its principal place of business listed as 702 SW 8th St, Bentonville, Arkansas 72716, and is authorized to do business in the State of Florida. Defendant also owns and maintains a website that is accessible and viewed by consumers throughout Florida and nationwide.[1]

11.     Defendant and its employees, subsidiaries, affiliates, and other related entities, were, at all times relevant herein, agents, servants and employees of each other, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendant, while actively engaged in the scope of their duties.

### VI. <u>FACTUAL ALLEGATIONS</u>

12.     This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing of its Great Value™ Veggie Straws food products advertised as containing "No Artificial Flavors or Preservatives."

13.     Plaintiff, DEVIN LARA has purchased one or more of the Great Value™ Veggie Straws varieties during the Class period from Walmart retail stores located in Citrus County, Florida; most recently on or about November 2021 a purchase of the Great Value™ Zesty Ranch

---

[1] http://www.walmart.com

variety from a Walmart retail store located in Citrus County, Florida.  *See* **EXHIBIT A,** attached hereto and incorporated herein, a true and correct representation of the Product label.

14.     In purchasing the Products, Plaintiff saw, read, and relied on the packages and advertising for the Products claiming to have "No Artificial Flavors or Preservatives." Plaintiff and Class members have been damaged by their purchase of the Products because the labeling and advertising for the Products was and is deceptive and misleading; therefore, the Products are worth less than what Plaintiff paid for them, and Plaintiff and Class Members did not receive what they reasonably intended to receive, which was a product that was without chemical preservatives or artificial flavorings.

15.     Defendant misleads consumers into believing that the Products contain no artificial preservatives or flavors with false labeling claims to this effect. However, the truth is, the Products contain the chemical preservative citric acid, and synthetic  flavoring  ingredient, malic acid.

### "No Artificial Preservatives" Claim is Misleading Because the Product Contains Artificial Preservatives

16.     The Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5).

17.     As described above, a chemical preservative as defined by the FDA is a substance that "tends" to prevent or retard the deterioration of foods. Thus, it is not necessary that the ingredient *function* as a preservative in *every single instance* for it to qualify as a preservative according to the FDA's definition. The citric acid ingredient functions as synthetic preservative in the Products.

18.     Moreover, the FDA expressly classifies citric acid as a preservative in its <u>Overview of Food Ingredients, Additives, and Colors</u>, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, **<u>citric acid</u>**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

19.     The FDA has also classified citric acid as a chemical preservative in a Warning Letter, dated October 6, 2010, to the manufacturer of "Pineapple Bites with Coconut" and "Pineapple Bites":

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the *chemical preservative[s] ascorbic acid and citric acid,* but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

20.     FBC Industries, Inc., a preservative manufacturer, describes citric acid as "the most commonly used acidulant in the industry" because of its preservative qualities. As a food additive or food grade product, "citric acid is used as a flavoring and preservative."[2]

---

[2] https://fbcindustries.com/citrates

### "No Artificial Flavors" Claim is Misleading Because
### the Product Contains Artificial Flavors

21.     Defendant manufactures, packages, labels, markets, and sells zesty ranch flavored veggie straws Products purporting to contain "No Artificial Flavors."

22.     Though the ingredients include "Natural Flavors," the "No Artificial Flavors" representations are false, deceptive, and misleading because the Products contains malic acid, an artificial ingredient which imparts and contributes to the tangy, sweet, and sour ranch flavor in the Products.

23.     The malic acid used in the Product is manufactured in petrochemical plants from benzene or butane — components of gasoline and lighter fluid — through a series of chemical reactions involving highly toxic chemical precursors and byproducts.

24.     Pursuant to FDA regulations, malic acid is used as a "flavor enhancer" or "flavoring agent," and can also be used as a "pH control agent" in food. 21 C.F.R. §184.1069(c).

25.     Even if Defendant only intended to use malic acid as a pH control agent, its presence in the Products nonetheless impacts, affects, or enhances the flavor and/or flavoring profile of the Products. Simply put, if Defendant removed malic acid as an ingredient, the Products would taste different. The malic acid ingredient functions as a flavoring in the Products.

26.     Federal regulations declare that if a food contains artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor [which] shall be accompanied by the word(s) "artificial" or "artificially flavored". . ., e.g., "artificial vanilla," "artificially flavored strawberry, "or "grape artificially flavored." 21 C.F.R. 101.22(i) (3), (4).

27.     Such statements must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id.*

28.     The Products' synthetic malic acid flavoring ingredient simulates, resembles, and reinforces the characterizing flavors in the Products.

29.     Defendants were required to display prominently on the Products' front labels a notice that informs consumers that the Products contained artificial flavoring.

30.     Defendant's representations convey a series of express claims and/or omissions that Defendant knows are material to the reasonable consumer, and which Defendant intended for consumers to rely upon when choosing to purchase the Products.

31.     At all times material hereto, and based on information and belief, Defendant has had actual knowledge, or should have had actual knowledge, that the Products' "No Artificial Flavors or Preservatives" representations are false, deceptive, and likely to mislead reasonable consumers, but has failed to adequately disclose and/or warn consumers about the presence of chemical preservative or flavoring ingredients anywhere on the front of the Products' labeling or packaging, and has failed to provide adequate relief to Plaintiff or members of the putative Class who purchased the Products.

32.     If the misleading conduct were remedied, *i.e.,* if the Products were altered to conform to the representations on the labels, Plaintiff would consider purchasing the Products again.

**<u>Plaintiff and Class Members Were Injured as a Result of Defendant's Misrepresentations</u>**

33.     Plaintiff and Class members were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that they were led to believe were chemical preservative and artificial flavoring-free, but consumers then received chemical preservative and artificial flavoring-laden Products, which have significantly less value. Plaintiff and Class

members were thus deprived of the benefit of their bargains. Plaintiff and Class members would not have purchased the Products or would have been willing to pay less for them, had they known the truth about them. Plaintiff and Class members were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

34.     By representing that the Products have "No Artificial Flavors or Preservatives" Defendant seeks to capitalize on consumers' preference for healthier foods with fewer additives, and the association between these products and a wholesome way of life.

35.     American consumers are increasingly seeking out and purchasing foods that they perceive are principally made of ingredients that are healthful and nutritious.[3]

36.     Consumers are willing to pay more for unprocessed or less processed products with no additives because of this association, as well as because of the perceived higher quality, health, and safety benefits associated with preservative-free foods.

37.     The marketing research firm Mintel reports that more and more Americans are concerned with avoiding foods containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).  Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[4]

---

[3] Nancy Gagliardi, Consumers Want Healthy Foods—And Will Pay More for Them, FORBES (Feb. 18, 2015, 11:30 AM), http://goo.gl/A7Z5WN (last visited 01/02/2019) (88% of respondents willing to pay more for healthier foods); see INT'L FOOD INFO. COUNCIL FOUND., WHAT'S YOUR HEALTH WORTH?: FOOD & HEALTH SURVEY 2015, at 42 (2015), http://goo.gl/4g5wNb.

[4] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-becausethey-believe-them-to-be-more-natural-or-less-processed

38.     Alternet.org reports on research showing that most Americans are prepared to pay a premium price for healthier options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.
> When it comes to what consumers will be seeking out more of over the coming year, it may amount to a single word. "Just think of the word no," Seifer said. "No artificial preservatives, no additives, no growth hormones."[5]

**Defendant's Misrepresentations Were Material To, and Would Be Reasonably Relied Upon By, Reasonable Consumers**

39.     Plaintiff and Class members reasonably relied on Defendant's false and/or misleading representations that the Products were free of artificial flavors or preservatives.

40.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were misbranded and misleading as set forth herein, and would not have bought the Products had they known the truth about them.

41.     A representation that a product has no chemical preservatives or flavors is material to a reasonable consumer when deciding to purchase it. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Products were free of chemical preservatives or flavors because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see consumer behavior research above). Defendant would not have included these representations on the Product labels if this was not going to influence consumer behavior.

---

[5] http://www.alternet.org/food/8-food-trends-watch-2016

**Defendants Misrepresentations Were Material To Reasonable Consumers**

42.     Defendant is aware, or should be aware, that claims of food containing "No Artificial Flavors or Preservatives" are material to reasonable consumers.

43.     Defendant knew or should have known that its claims are misleading.

44.     Given the premium that consumers attach to artificial preservative or flavor -free foods as detailed above, Defendant had, and has an interest in misleading consumers because its deceptions and misleading omissions provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

45.     Defendant made the deceptive representations and omissions on the Products with the intent to induce Plaintiff and members of the putative Class to purchase the Products.

46.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

47.     Defendant's misleading affirmative statements about its Products obscured the material fact that the Products contain the chemical preservative citric acid and artificial flavoring malic acid.

48.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as "No Artificial Flavors or Preservatives," over comparable products not so labeled, furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "No Artificial Flavors or Preservatives" by Defendant's competitors, or those that do not claim to contain "No Artificial Flavors or Preservatives."

49.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and putative Class members in that they:

a.   paid a sum of money for Products that were not as represented;

b.   paid a premium price for Products that were not as represented;

c.   were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

d.   were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

e.   did not receive Products that measured up to their expectations as created by Defendant;

f.    ingested a substance that was other than what was represented by Defendant;

g.   ingested a substance that Plaintiff and the other members of the Class did not expect or consent to;

h.   ingested a substance that was of a lower quality than what Defendant promised;

i.    were denied the benefit of knowing what they ingested;

j.    were denied the benefit of truthful food labels;

k.   were forced unwittingly to support an industry that contributes to environmental, ecological, and/or health damage;

l.    were denied the benefit of supporting an industry that sells preservative free foods and contributes to environmental sustainability; and

m.  were denied the benefit of the beneficial properties of the preservative free food as promised.

50.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and putative Class members would not have been injured.

51.     Plaintiff paid for Products that contained "No Artificial Flavors or Preservatives," but received Products that were not without "No Artificial Flavors or Preservatives." The Products Plaintiff and the Class received were valueless and worth less than the amounts they paid.

### Plaintiff's Purchase of The Products

52.     Plaintiff, DEVIN LARA has purchased one or more of the Great Value™ Veggie Straws varieties during the Class period from Walmart retail stores located in Citrus County, Florida; most recently on or about November 2021 a purchase of the Great Value™ Zesty Ranch variety from a Walmart retail store located in Citrus County, Florida. Plaintiff made her purchase to consume a food with "No Artificial Flavors or Preservatives"; however, the Products contained the chemical preservative citric acid and artificial flavoring  malic acid.  Plaintiff purchased the Products believing they contained "No Artificial Flavors or Preservatives" and would not have purchased the Products but for the "No Artificial Flavors or Preservatives" representations on the Products' front labeling or packaging.

53.     Due to the "No Artificial Flavors or Preservatives" representations on the Products' front labeling or packaging being false, the Products are useless, valueless and/or worth less than the purchase price Plaintiff paid to purchase the Products.

54.     Plaintiff and the other putative Class members all paid money for the Products, but Plaintiff and the other Putative Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the other putative Class members purchased, purchased more of, or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the other putative Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

55.     Plaintiff and members of the putative Class have been economically injured in an amount equal to the aggregate purchase price paid by putative Class members during the Class Period, or alternatively, an amount equal to the aggregate premium price paid for the Products over comparable products that are truthfully offered without artificial flavors or preservatives, or those that do not claim to have "No Artificial Flavors or Preservatives."

56.     If Defendant's Products were reformulated such that its labels were truthful and not misleading, Plaintiffs would purchase these Products in the future. At present, however, Plaintiff cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading absent an enforceable injunctive order.

## V.  CLASS REPRESENTATION ALLEGATIONS

57.     Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth verbatim herein.

58.     Plaintiff brings this class action pursuant Federal Rule of Civil Procedure 23 and seeks certification of the claims and certain issues in this action pursuant to the applicable provisions of Federal Rule of Civil Procedure 23 on behalf of the class defined of the following individuals as follows:

> **All persons who purchased one or more of the Products containing citric acid or malic acid ingredients throughout the United States during the four years preceding the filing of this Complaint, through and until the date Notice is provided to the Class.**
>
> In addition, and/or alternatively[6]
>
> **All persons who purchased one or more of the Products containing citric acid or malic acid ingredients throughout the State of Florida during the four years preceding the filing of this Complaint, through and until the date Notice is provided to the Class.**

---

[6] Plaintiff reserves the right to amend, alter, expand, narrow and/or redefine the class definition depending on the information obtained throughout discovery.

59.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.   Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

60.     All members of the Class were and are similarly affected by the Products' "No Artificial Flavors or Preservatives" misrepresentation because they all purchased the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

61.     Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class is so numerous that joinder of all members would be impractical. Based on the annual sales of the Products and the popularity of the Products, it is apparent that the number of consumers of the Products would at least be in the many thousands, thereby making joinder impossible.

62.     Questions of law and fact common to the Plaintiff and the Class exist that predominate over questions affecting only individual members, including, *inter alia*:

a) Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in Florida were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201, *et seq*.;

b) Whether the Products contain "No Artificial Flavors or Preservatives;"

c) Whether Defendant's representations, through labeling and advertising, that the Products contain "No Artificial Flavors or Preservatives" is material to a reasonable consumer;

d) Whether Defendant's representations, through labeling and advertising, that the Products contain "No Artificial Flavors or Preservatives" is false to a reasonable consumer;

e) Whether Defendant's representations, through labeling and advertising, that the Products contain "No Artificial Flavors or Preservatives" is likely to mislead a reasonable consumer;

f) Whether Defendant concealed or omitted material information concerning the Products;

g)  Whether Defendant's conduct violates public policy;

h) Whether Defendant's conduct injured Plaintiff, and if so, the extent of the injury suffered by Plaintiff and members of the putative Class; and

i)   Whether Plaintiff and the members of the putative Class are entitled to declaratory relief;

j) Whether Plaintiff and the members of the putative Class are entitled to injunctive relief; and

k) Whether Plaintiff and the members of the putative Class are entitled to actual damages, attorneys' fees and costs.

63.    The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class, as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

64.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class.  Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

65.    Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims.

66.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect its own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

67.     Certification is also appropriate because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

68.     Further, given the large number of class members, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

69.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.

70.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

### CAUSES OF ACTION
### COUNT I:
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ.*

71.     Plaintiff re-alleges and incorporates by reference all allegations set forth in paragraphs one (1) through seventy (70) of this Complaint, as if fully set forth verbatim herein.

72.     This cause of action is brought pursuant to sections 501.201 to 501.213, *Florida Statutes*, which is known as the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

73.     FDUTPA "shall be construed liberally to promote the following policies: (1)   To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices; (2)   To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce; [and] (3) To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection. Fla. Stat. § 501.202(2).

74.     Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat § 501.204(1).

75.     Accordingly, pursuant to section 501.204(1), *Florida Statutes*, Plaintiff seeks an order declaring that Defendant's use of the Products' "No Artificial Flavors or Preservatives" claim is unlawful. Fla. Stat. § 501.204(1).

76.     Section 501.204(2), *Florida Statutes* states that "it is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2015."

77.     Pursuant to section 501.211(1), *Florida Statutes*, Plaintiff seeks declaratory relief in the form of an order declaring Defendant's use of the Products' "No Artificial Flavors or Preservatives" claims to be a deceptive and unfair business practice, and to enjoin Defendant from continuing its deceptive and unfair business practice, including being ordered to immediately cease its use of the "No Artificial Flavors or Preservatives" claim in any regard from any the Products' labeling and/or packaging, and to cease claiming, stating, representing, advertising, marketing or sell any of the Products as containing "No Artificial Flavors or Preservatives" ("Without regard to

any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part"). Fla. Stat. § 501.211(1).

78.     Pursuant to section 501.211(2), *Florida Statutes*, Plaintiff, individually and on behalf of members of the putative Class, seeks an order awarding actual damages, plus attorneys' fees, and costs, suffered from their loss of the total amounts they paid to purchase the Products that unlawfully claim to be "No Artificial Flavors or Preservatives."  Fla. Stat. §§ 501.211(2), 2105(1).  Because Plaintiff would not have purchased the Products but for the "No Artificial Flavors or Preservatives" claims, actual damages should be calculated based on the Products' entire purchase price.  Actual damages should be easily calculated through discovery requesting Defendant's total sales of the Products throughout the State of Florida and/or nationwide during the Class Period. Alternatively, Plaintiff seeks 'premium purchase price damages' suffered by Plaintiff and members of the putative Class, to be calculated by a comprehensive review of the consumer marketplace to determine the aggregate price premium paid by Plaintiff and members of the putative Class throughout the State of Florida and/or nationwide during the Class Period.  It should be undisputed that the Products' "No Artificial Flavors or Preservatives" claims command a higher price than other similar products that do not make the "No Artificial Flavors or Preservatives" claims.

79.     Accordingly, Defendant's unfair and deceptive practices in selling the Products that claim to contain "No Artificial Flavors or Preservatives," are likely to mislead—and have misled— Plaintiff and members of the putative Class because the Products' "No Artificial Flavors or Preservatives" representations are likely to mislead reasonable consumers, and therefore, violate FDUTPA.

80.    Defendant has violated FDUTPA by engaging in the unfair and deceptive sale of the Products as containing "No Artificial Flavors or Preservatives," which offends public policies and is immoral, unethical, unscrupulous and substantially injurious to consumers because the Products contain the preservative citric acid and synthetic flavoring ingredient malic acid, and therefore, the "No Artificial Flavors or Preservatives" claims are false, deceptive, and likely to mislead reasonable consumers.

81.    Defendant's material misrepresentations and omissions were intended to, and did deceive Plaintiff and members of the putative Class, into believing that the Products contained "No Artificial Flavors or Preservatives."

82.    Had Plaintiff and putative Class members known that the "No Artificial Flavors or Preservatives" claims were not true, they would not have purchased the Products.

83.    As a result of Defendant's deceptive and unfair acts, Plaintiff and putative Class members have been damaged in the amount of the aggregate retail sales of the Products throughout the State of Florida and/or nationwide during the Class Period. Alternatively, Plaintiff and members of the putative Class are entitled to the price premium they paid for the Products due to the "No Artificial Flavors or Preservatives" claims. However, because Plaintiff would not have paid anything for the Products had she known the truth about the Products when purchased, Plaintiff contends that the Class is entitled to restitution of the full purchase price.

84.    Defendant should also be ordered to cease its deceptive and unfair business practices and should be made to engage in a corrective advertising campaign, to inform consumers that the Products contained chemical preservatives and/or artificial flavorings when purchased.

**WHEREFORE**, Plaintiff, individually and on behalf of the putative Class, seeks actual damages, injunctive relief in the form of corrective advertising, equitable relief including

declaratory relief, restitution, pre and post judgment interest, reimbursement of costs, attorneys' fees, and for any other relief that this Honorable Court deems just, appropriate, and proper.

**COUNT II:**
**BREACH OF EXPRESS WARRANTY**

85.     Plaintiff re-alleges and incorporates by reference all allegations set forth in paragraphs one (1) through seventy (70) of this Complaint, as if fully set forth verbatim herein.

86.     Defendant has created an express warranty by claiming that the Products contain "No Artificial Flavors or Preservatives."

87.     Defendant has expressly represented and warranted that the Products contain "No Artificial Flavors or Preservatives," when in fact, the Products contain the chemical preservative citric acid, and synthetic flavoring ingredient malic acid.

88.     The Products are warranted, advertised, and marketed directly to consumers like Plaintiff and members of the putative Class by Defendant.

89.     Defendant made an express warranty that the Products contain "No Artificial Flavors or Preservatives," which Plaintiff and members of the putative Class reasonably relied upon in making their decision to purchase the Products.

90.     The "No Artificial Flavors or Preservatives" express warranty made by Defendant regarding the Products is false because the Products contain synthetic preservatives and flavoring ingredients.

91.     Therefore, Defendant has breached its "No Artificial Flavors or Preservatives" express warranty.

92.     As a result of this breach, caused by the failure of the Products to perform as expressly warranted by Defendant, Plaintiff and members of the putative Class have suffered economic damages in an amount to be determined at trial, by purchasing the Products that they

would not have purchased had they known that the Products' "No Artificial Flavors or Preservatives" express warranty was not true, and have spent money on the Products that were not what they were represented or warranted to be, and that lack the value Defendant represented the Products to have.

93.    The injuries and damages suffered by Plaintiff and members of the putative Class amount to the aggregate purchase amount paid for the Products throughout the United States during the Class Period.

94.    Plaintiff has provided notice to Defendant of this cause of action. On or about July 2021, Plaintiff, individually and on behalf of members of the putative Class, sent Defendant a Notice Letter, via FedEx Express Mail, notifying Defendant that it has breached the express warranty it has made in claiming that the Products are "No Artificial Flavors or Preservatives."

**WHEREFORE**, Plaintiff, individually and on behalf of the putative Class, seeks all available legal remedies as a result of Defendant's breach of express warranty, actual damages suffered as a result of purchasing the Products that were expressly warranted as containing "No Artificial Flavors or Preservatives," and any relief deemed just, appropriate, or proper by this Honorable Court.

## COUNT III:
## UNJUST ENRICHMENT

95.    Plaintiff re-alleges and incorporates by reference all allegations set forth in paragraphs one (1) through seventy (70) of this Complaint, as if fully set forth verbatim herein.

96.    Plaintiff and Putative Class members conferred a benefit on Defendant by purchasing the Products at a premium price.

97.    Defendant received the money paid by Plaintiff and Putative Class members and thus knew of the benefit conferred upon them.

98.     Defendant accepted and retained the benefit in the amount of the profits it earned from sales to Plaintiff and Class members.

99.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Putative Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. Specifically, Defendant has impliedly represented that its Products contain "No Artificial Flavors or Preservatives," when in fact, the Products contain the chemical preservative citric acid, and artificial flavoring ingredient malic acid.

100.    As a result of purchasing the Products, Plaintiff and the Putative Class spent money on Products that they otherwise would not have purchased because the Products contained the chemical preservative citric acid and artificial flavoring ingredient malic acid.

101.    Moreover, the Products are misbranded and sold under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit of Plaintiff and Putative Class members' money.

102.    In the alternative to Plaintiff's claims for damages, Plaintiff does not have an adequate remedy at law against Defendant, thereby necessitating Plaintiff's claim for Unjust Enrichment.

103.    Plaintiff and Putative Class members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid had they known that the Products' "No Artificial Flavors or Preservatives" claims are false. Because Plaintiff and the Putative Class would not have paid anything for the Products had they known that the Products contained artificial preservatives and flavors, Plaintiff and the Putative Class are entitled to restitution of the full aggregate purchase price of the Products.

**WHEREFORE**, Plaintiff, individually and on behalf of the putative Class, seeks all available equitable remedies as a result of Defendant's unjust enrichment, including injunctive relief, declaratory relief, disgorgement, restitution, pre- and post- judgment interest, and reimbursement of costs and attorneys' fees, along with any other relief deemed just, appropriate, or proper by this Honorable Court.

## IV.    **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action alleged above, as follows:

A.    For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representative of the Class, ordering Defendant to pay all costs associated with notice and administration of payment to the Class, and designating Plaintiff's attorneys as Class Counsel;

B.    For declaratory relief in the form of an order declaring Defendant's conduct to be in violation of FDUTPA and enjoining Defendant from pursuing the unlawful policies, acts, and practices alleged in this Complaint;

C.    For injunctive relief in the form of an order prohibiting Defendant from claiming that the Products contain "No Artificial Flavors or Preservatives;"

D.    For an order requiring Defendant to pay full restitution to Plaintiff and all members of the putative Class;

E.    For an order requiring Defendant to disgorge all ill-gotten gains flowing from its unlawful business practices alleged in this Complaint;

F.    For an award of actual damages in an amount to be determined at trial;

G.    For an award of attorneys' fees;

H.    For an award of costs of this suit;

I.      For an award of pre- and post-judgment interest on any amounts awarded; and

J.      Providing such further relief as may be just, appropriate, or proper.

## VIII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial on all issues so triable.


Dated:   September 29, 2022

Respectfully submitted,

/s/Alexander J. Korolinsky
Alexander J. Korolinsky, Esq.
Florida Bar No.: 119327
AJK LEGAL
1001 Brickell Bay Dr Ste 2700
Miami FL 33401
Tel: (877) 448-8404
korolinsky@ajklegal.com

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan, Esq.*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice Application Forthcoming

# EXHIBIT A



**INGREDIENTS:** POTATO STARCH, POTATO FLOUR, SUNFLOWER AND/OR SAFFLOWER OIL, BUTTERMILK POWDER (SKIM MILK, LACTIC ACID, CULTURES), SALT, COCONUT OIL, MALTODEXTRIN, NATURAL FLAVORS, DEHYDRATED GARLIC, CANE SUGAR, SPINACH POWDER, TOMATO POWDER, DEXTROSE, YEAST EXTRACT, SOUR CREAM (CREAM, CULTURES, LACTIC ACID), BEET ROOT POWDER, DEHYDRATED ONION, TURMERIC EXTRACT, CITRIC ACID, CREAM, CULTURED NONFAT MILK, BLACK PEPPER, LACTIC ACID, PAPRIKA, MALIC ACID, WHITE VINEGAR POWDER (MALTODEXTRIN, VINEGAR), NONFAT MILK, SODIUM CASEINATE, SPICES.

**CONTAINS MILK.**